IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DAVID G. SAUCEDO and DAVID GONZALES, JR., | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | CV. NO. SA-12-CV-00868-DAE |
| vs. | ) ) | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR THE LONG BEACH TRUST 2001-1, JP MORGAN CHASE BANK, N.A. AND MCCARTHY, HOLTHUS, & ACKERMAN, LLP, | ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

On February 14, 2013, the Court heard Defendants' Motion to

Dismiss ("Motion").  Oscar L. Cantu, Jr., Esq., appeared at the hearing on behalf of

David G. Saucedo ("Saucedo") and David Gonzales, Jr. ("Gonzales") (collectively,

"Plaintiffs"); Rachel Lee Hytken, Esq., appeared at the hearing on behalf of

Deutsche Bank National Trust Company ("Deutsche Bank") and JPMorgan Chase

Bank, N.A. ("JPMorgan") (collectively, "Defendants").  After reviewing the

motion and the supporting and opposing memoranda, the Court **GRANTS**

Defendants' Motion.  ("MTD," Doc. # 3.)

BACKGROUND

On February 7, 2001, Plaintiff Saucedo executed a promissory note

payable to Long Beach Mortgage Company ("Long Beach") and secured by a deed

of trust.[1]  ("Compl.," Doc. # 1 Ex. A ¶ 6.)  Plaintiff Gonzales apparently lives on

part of the property the promissory note was executed to purchase.  (Compl. ¶ 9.)

On August 6, 2003, Washington Mutual Bank ("WAMU"), the successor in

interest to Long Beach, filed a Partial Release of Deed of Trust, which stated that

the Deed of Trust had been partly paid and satisfied.  (Id. Ex. B.)  On December 4,

2009, JPMorgan, as purchaser of WAMU, the successor in interest to Long Beach,

assigned the note to Deutsche Bank as Trustee for Long Beach Mortgage Loan

Trust 2001-1 ("the Trust").  (Id. ¶ 8; Id. Ex. C.)  According to Plaintiffs, on

September 4, 2012, Deutsche Bank, through its servicer JPMorgan and its

attorneys McCarthy, Holthus & Ackerman, LLP ("MHA"), posted Plaintiffs'

property for foreclosure.  (Id. ¶ 11.)

---

[1]  The property at issue is located at 4422 Commercial Avenue, San Antonio,
Texas 78221.  (MTD at 3.)

Plaintiffs allege that the assignment of the note to the Trust was "a void transaction" because it violated the terms of the Trust's Pooling and Servicing Agreement[2] ("PSA").[3]  (Id.  ¶ 20.)  Specifically, Plaintiffs allege that, "according to the PSA, the Trust was closed on March 15, 2001," and did not provide for the transfer of any loans into the Trust after the closing date.  (Id. ¶ 13.)  Plaintiffs' promissory note was transferred to the Trust in 2009.  (Id. ¶ 13; Id. Ex. C.)  This post-closing date transfer, according to Plaintiffs, "gives rise to a plausible

---

[2]  A PSA is one of a number of "complex, interrelated contracts" typically executed when a mortgage-securitization trust is formed.  Chase Manhattan Mortg. Corp. v. Advanta Corp., No. Civ. A. 01-507 KAJ, 2005 WL 2234608, at *1 (D. Del. Sept. 8, 2005).  In a mortgage securitization, mortgage loans are acquired, pooled together, and then sold into a trust.  Id.  Investors can purchase an interest in the trust, and that money is used to raise funds for new mortgages.  BlackRock Financial Mgmt. Inc. v. Segregated Account of Ambac Assur. Corp., 673 F.3d 169, 173 (2d Cir. 2012).  "The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a [PSA]." Id.

[3]  Plaintiffs ask the Court to take judicial notice of the PSA, which Plaintiffs claim can be found on the website of the United States Securities and Exchange Commission ("SEC").  (Compl. ¶ 13.)  The Court may take judicial notice of documents filed with the SEC, and may consider such documents in determining a motion to dismiss.  See R2 Invs. LDC v. Phillips, 401 F.3d 638, 640 n.2 (5th Cir. 2005); see also Sosebee v. Steadfast Ins. Co., 701 F.3d 1012, 1018 n.1 (5th Cir. 2012) ("Pursuant to Fed. R. Evid. 201(b), [the Court is] entitled to take judicial notice of adjudicative facts from reliable sources 'whose accuracy cannot reasonably be questioned.'").  However, the Court was unable to find the document referenced by Plaintiffs on the SEC's website.  For the purposes of this Motion to Dismiss, the Court will assume the truth of Plaintiffs' allegations regarding the PSA's content.

inference that at least some part of the subsequent assignment, notices of default, and exercise of the power of foreclosure sale may be improper."  (Id. ¶ 13.)

In addition, Plaintiffs allege that the assignment violated "REMIC provisions" of the PSA.  (Id. ¶¶ 14–20.)  The Trust was allegedly structured as a real estate mortgage investment conduit ("REMIC"), which enabled it to receive preferential tax treatment.  (Id. ¶ 18.)  According to Plaintiffs, the PSA explicitly provides that no party to the PSA shall take any action that would result in the imposition of a tax upon the REMIC.  (Id. ¶ 19.)  Plaintiffs claim that allowing a mortgage into the Trust more than 90 days after the March 15, 2001 closing date violated the REMIC provisions and exposed the Trust to tax liability.  (Id. ¶ 18.)

Plaintiffs argue that because the transfer violated the terms of the PSA, under New York law it is void.  (Doc. # 6 at 1–2.)  Thus, according to Plaintiff, the loan was never transferred to the Trust, and Deutsche Bank lacks standing to foreclose.  (Compl. ¶¶ 20, 23; Doc. # 6 at 2.)

On September 4, 2012, Plaintiffs filed a Complaint in state court. ("Compl.")  Plaintiffs seek injunctive and declaratory relief, and assert causes of action for: (1) violations of Texas Civil Practice and Remedies Code § 12.002 (id. ¶¶ 24–27); (2) violations of the Texas Debt Collection Practices Act ("TDCPA")

(id. ¶¶ 28-33); and (3) negligence arising from Defendants' failure to exercise due care in the collection of a debt (id. ¶¶ 34–37).

On September 18, 2012, the Defendants filed a Notice of Removal in this Court.  (Doc. # 1.)  Defendants assert that federal jurisdiction is proper pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000 and is between citizens of different states.[4]  (Doc. # 1 at 3.)  On September 25, 2012, the Defendants filed the instant Motion to Dismiss.  ("Mot.," Doc. # 3.)  On October 16, 2012, Plaintiffs filed a Response in Opposition to Defendants' Motion to Dismiss.  ("Opp.," Doc. # 6.)  On October 19, 2012, the Defendants filed a Reply in further support of their Motion.  ("Reply," Doc. # 7.)

<u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the

---

[4] Defendant MHA is a citizen of Texas, as are Plaintiffs.  In the Notice of Removal, Defendants assert that MHA was improperly joined to defeat diversity jurisdiction, and that its citizenship should therefore be disregarded.  (Doc. # 1 at 4–5.)  Plaintiffs do not dispute this.

plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)

(quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464,

467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff

must plead "enough facts to state a claim to relief that is plausible on its face."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

       A complaint need not include detailed facts to survive a Rule 12(b)(6)

motion to dismiss.  See Twombly, 550 U.S. at 555–56.  In providing grounds for

relief, however, a plaintiff must do more than recite the formulaic elements of a

cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions,"

and courts "are not bound to accept as true a legal conclusion couched as a factual

allegation."  Iqbal, 556 U.S. at 678 (internal quotations and citations omitted).

Thus, although all reasonable inferences will be resolved in favor of the plaintiff,

the plaintiff must plead "specific facts, not mere conclusory allegations."  Tuchman

v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v.

IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true

conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted). However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

DISCUSSION

I.     Standing

Plaintiffs' claims rely on the argument that Defendants' noncompliance with the PSA renders the loan's transfer to the Trust void. Defendants in turn argue that Plaintiffs lack standing to assert noncompliance with the PSA because they were not parties to the PSA. (Mot. at 3–4.) In support of this argument, Defendants point to a number of cases in this circuit in which courts have held that plaintiff-mortgagors have no standing to assert claims based on violations of a PSA to which they were not a party. See Metcalf v. Deutsche Bank Nat'l Trust Co., No. 3:11-CV-3014-D, 2012 WL 2399369, at *5 (N.D. Tex. June 26, 2012) ("Courts in this circuit have repeatedly held that borrowers do not have

7

standing to challenge the assignments of their mortgages because they are not parties to those assignments.") (citing Garrett v. HSBC Bank USA, N.A., No. 3:12-CV-0012-D, 2012 WL 1658796, at *2 (N.D. Tex. May 11, 2012)).

In response, Plaintiffs urge the Court to find that there is a distinction between attempting to enforce or invoke rights under the PSA and seeking, as Plaintiffs do, to establish that the attempted transfer in violation of the PSA was invalid.  (Opp. at 1–2.)  Defendants call this a "semantic argument" (Reply at 2), citing to Abruzzo v. PNC Bank, in which the court rejected a plaintiff's similar attempt to distinguish enforcement of the PSA from a challenge to the defendant's standing to foreclose.  No. 4:11-CV-735-Y, 2012 WL 3200871, at *2 (N.D. Tex. July 30, 2012).

The Defendants are correct to point out that numerous courts within this circuit have held that a plaintiff-mortgagor does not have standing to assert claims on the basis of an allegedly invalid assignment to which it was not a party. See Metcalf, 2012 WL 2399369, at *5; DeFranceschi v. Wells Fargo Bank, N.A., 837 F. Supp. 2d 616, 623 (N.D. Tex. 2011) ("Plaintiffs do not have standing to challenge the assignments because they were not a party to those assignments.") (quoting Eskridge v. Fed. Home Loan Mortg. Corp., No. W-10-CA-285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011)); Schieroni v. Deutsche Bank Nat'l

Trust Co., No. H-10-663, 2011 WL 3652194, at *6 (S.D. Tex. Aug. 18, 2011).

Other courts, however, have held that the plaintiff <u>may</u> have standing, depending

on the nature of the challenges asserted.  <u>See</u> <u>Routh v. Bank of Am., N.A.</u>, No. SA-

12-CV-244-XR, 2013 WL 427393, at *9 (W.D. Tex. Feb. 4, 2013); <u>Puente v.</u>

<u>CitiMortgage, Inc.</u>, No. 3:11-CV-2509, 2012 WL 4335997, at *6 (N.D. Tex. Aug.

29, 2012) ("However, a careful review of Texas law persuades the Court that it is

not completely accurate to say that one can never challenge assignment to which

one is not a party.") (internal quotation marks omitted) (quoting <u>Kramer v. Fed.</u>

<u>Nat'l Mortg. Ass'n</u>, No. A-12-CA-276-SS, 2012 WL 3027990, at *4 (W.D. Tex.

May 15, 2012)); <u>Miller v. Homecomings Fin., LLC</u>, 881 F. Supp. 2d 825 (S.D.

Tex. 2012).  The courts in the latter category relied on Texas law for the

proposition that a plaintiff-mortgagor may have standing to challenge the validity

of an assignment.

   Thus, in <u>Routh</u>, the court noted that "Texas has long followed the

common law rule which permits a debtor to assert against an assignee any ground

that renders the assignment void or invalid."  2013 WL 427393, at *8 (quoting

<u>Miller</u>, 2012 WL 3206237, at *5); <u>see also</u> <u>Tri-Cities Constr., Inc. v. Am. Nat'l Ins.</u>

<u>Co.</u>, 523 S.W.2d 426, 430 (Tex. Civ. App. 1975).  The rule has been stated as

follows by the Texas Court of Appeals:

> The law is settled that the obligors of a claim may defend the suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice.

Tri-Cities, 523 S.W.2d at 430 (citing Glass v. Carpenter, 330 S.W.2d 530, 537 (Tex. Civ. App. 1959)). This rule accords with long-established principles of contract law. A void contract is "invalid or unlawful from its inception" and therefore cannot be enforced. 17A C.J.S. Contracts § 169. Thus, a mortgagor who was not a party to an assignment between mortgagees may nevertheless challenge the enforcement of an assignment if the assignment is void. A voidable contract, on the other hand, "is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract." Id. Accordingly, only the parties to a voidable contract may seek to avoid its enforcement.

In this case, Plaintiffs allege that under New York law, which apparently governs the PSA, the assignment is void. (Compl. ¶¶ 17, 20.) Specifically, Plaintiffs cite to New York Estate Powers & Trusts Laws § 7-2.4, which states that "every act in contravention of the Trust is void." N.Y. Est. Powers & Trusts Law § 7-2.4; see also Matter of Newlin, 465 N.Y.S.2d 102,

104–105 (N.Y. Sup. Ct. 1982) (holding that, if trustees violated the terms of the trust, the transaction in question would be void under § 7-2.4); <u>Dye v. Lewis</u>, 324 N.Y.S.2d 172, 175 (N.Y. Sup. Ct. 1971) ("The authority of the trustee is subject to any limitations imposed by the trust instrument, and every act in contravention of the Trust is void.") (internal citations omitted) (quoting N.Y. Est. Powers & Trusts Law § 7-2.4).  If, as Plaintiffs allege, § 7-2.4 renders the note's late transfer into the Trust a nullity, it appears that Plaintiffs have standing to attack the assignment's validity under Texas law.  After all, if the assignment to the Trust is void, Plaintiffs would theoretically be exposed to the possibility of double liability when the true holder of the note came forward to collect on it.  <u>See</u> <u>Routh</u>, 2013 WL 427393, at *9 (holding that the plaintiff had standing to challenge an allegedly fraudulent assignment because of the "theoretical risk of double liability").

However, this Court is not certain that New York law renders the note's transfer into the Trust void, even if the assignment violated the terms of the PSA.  The Illinois Court of Appeals confronted this very issue at length in <u>Bank of Am. Nat'l Ass'n v. Bassman FBT, LLC</u>, 981 N.E.2d 1 (Ill. App. Ct. 2012).  In that case, a mortgagor contested Bank of America's standing to foreclose on certain mortgages, arguing that the mortgages were not transferred in compliance with the PSA governing the trust into which they were transferred.  <u>Bassman</u>, 981 N.E.2d at

4.  The court noted that by its plain language, § 7-2.4 would seem to void any transaction that violated the terms of the trust, but the court also observed that New York case law indicates that acts in contravention of a trust may be ratified, and are therefore merely voidable, not void.  <u>Id.</u> at 7.

In any event, this Court need not decide whether Plaintiffs have standing to challenge the purportedly invalid assignment in order to reach the merits of Plaintiffs' claims.  A federal court may not bypass the question of Article III standing—which goes to the court's own jurisdiction—but may assume <u>statutory</u> standing in order to reach the merits of a case.[5]  <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94, 97 (1998) (rejecting the practice of "assuming" standing for the purpose of deciding the merits, but distinguishing between statutory standing and Article III standing); <u>see also</u> <u>Verizon Commc'ns Inc. v. Law Offices of Curtis v. Trinko, LLP</u>, 540 U.S. 398, 416 n.5 (2004) (observing that because the Court concluded that the plaintiff's complaint failed to state a claim under the Sherman Act, it was unnecessary to consider whether the plaintiff had antitrust standing); <u>Taylor v. Acxiom Corp.</u>, 612 F.3d 325, 339–40 (5th Cir.

---

[5]  Here, Defendants apparently question Plaintiffs' standing to challenge the assignment according to principles of contract law.  This cannot properly be called "statutory standing" but, like statutory standing, goes to whether the law "on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."  <u>Warth v. Seldin</u>, 422 U.S. 490, 500 (1975).

2010) (noting that the court need not address statutory standing because it affirmed the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6)). Thus, assuming, without deciding, that Plaintiffs have standing to challenge the assignment, the Court concludes that Plaintiffs have failed to state any claim upon which relief can be granted.

II.   Texas Civil Practice & Remedies Code § 12.002

Plaintiffs allege that Defendants violated Section 12.002 of the Texas Civil Practice and Remedies Code by filing with the Bexar County Clerk the allegedly fraudulent assignment (Compl. Ex. C), as well as the notice of foreclosure. (Compl. ¶¶ 24–27; Opp. at 6.) Section 12.002 states:

> A person may not make, present, or use a document or other record with:
> (1)   knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
> (2)   intent that the document or other record be given the same legal effect as a court record . . . evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
> (3)   intent to cause another person to suffer:
>       (A)   physical injury;
>       (B)   financial injury; or
>       (C)   mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code. § 12.002.  Defendants seek to dismiss this claim on the ground that neither an assignment nor a notice of foreclosure constitute a lien,

as required by the statute.  (Mot. at 4–5.)  In response, Plaintiffs appear to concede that the assignment and the notice of foreclosure are not "liens" (Opp. at 7), but argue that they are claims against real property as contemplated by § 12.002.

The Court concludes that Plaintiffs have failed to state a claim upon which relief may be granted under § 12.002.  Section 12.001(3) of the Texas Civil Practice and Remedies Code defines "lien" as "a claim in property for the payment of a debt and includes a security interest."  Tex. Civ. Prac. & Rem. Code. § 12.001(3).  In Marsh v. JPMorgan Chase Bank, N.A., the court observed that the legislature's purpose in enacting § 12.002 was to "creat[e] a private cause of action against a person who files fraudulent judgment liens or fraudulent documents purporting to create a lien or claim against real or personal property in favor of a person aggrieved by the filing."  --- F. Supp. 2d ---, 2012 WL 3756276, at *7 (W.D. Tex. Aug. 29, 2012) (quoting House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 1184, 75th Leg., R.S. (1997)) (emphasis added).  Accordingly, the court held that "in order to state a fraudulent lien claim under Section 12.002, a party must allege the challenged instrument 'purport[ed] to create a lien or claim against property.'"  Id.  Just as in Marsh, the assignment challenged by Plaintiffs "does not purport to create a lien or claim; it merely purports to transfer an existing deed of trust from one entity to another."  Id.  Thus, Plaintiffs have failed to allege

14

facts adequate to state a plausible claim for relief under § 12.002.  See Garcia v.

Bank of New York Mellon, No. 3:12-CV-0062-D, 2012 WL 692099, at *3 (N.D.

Tex. Mar. 5, 2012) (dismissing plaintiff's claim under § 12.002 for failure to

"[plead] facts that establish a plausible claim that either the assignment of the deed

of trust or the substitute trustee's deed is a lien as defined by the statute").

III.    Texas Debt Collection Practices Act ("TDCPA")

Plaintiffs allege that attempts by Defendants JPMorgan and

McCarthy, Holthus & Ackerman to "enforce a debt obligation upon Plaintiffs and

collect mortgage payments when [they] had no authority to do so are acts in

violation of the [TDCPA]," Tex. Fin. Code § 392.001 et seq.  (Compl. ¶ 29.)

Plaintiffs further allege that Defendants violated the TDCPA by engaging in the

following acts prohibited by the statute: (1) threatening that nonpayment of a

consumer debt would result in the seizure, repossession, or sale of property; (2)

threatening to take action prohibited by law; (3) misrepresenting the character,

extent, or amount of a consumer debt, or misrepresenting the consumer debt's

status in a judicial or governmental proceeding; (4) representing that a consumer

debt may be increased by the addition of attorney's fees, investigation fees, service

fees, or other charges where a written contract or statute does not authorize the

additional fees or charges; and (5) using a written communication that violates the

United States postal laws and regulations.  (Compl. ¶ 32.)  Defendants argue that Plaintiffs' "threadbare allegations are inadequate to support their TDCPA claims." (Mot. at 6.)  The Court agrees.

The TDCPA prohibits debt collectors from using various threatening, coercive, harassing, abusive, or misleading methods to collect debts from consumers.  See Tex. Fin. Code §§ 392.301–392.306.  Plaintiffs do not identify which provisions of the TDCPA it alleges Defendants have violated, and the Court can identify no provision prohibiting a debt collector from "collecting mortgage payments when it [has] no authority to do so."  (Compl. ¶ 29.)  The remaining allegations in this section are conclusory and, as Defendant points out, "parrot the statute" word for word.  (Mot. at 6; see, e.g., Tex. Finance Code § 392.301(a)(8) (prohibiting debt collectors from "threatening to take an action prohibited by law").)  Plaintiffs fail to allege any facts to support their claim under the TDCPA. Merely quoting provisions of the statute to the Court and alleging, without more, that Defendants have engaged in the prohibited conduct, is not sufficient to state a claim.  See Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

IV.   <u>Negligence</u>

Plaintiffs' third cause of action is for negligence.  Plaintiffs allege that Defendants failed to exercise due care in the collection of a debt by: (1) "posting properties for foreclosure which Defendants [do] not have [an] . . . interest in"; (2) filing fraudulent records; (3) recording an assignment executed "well after the closing date of the Trust to which Plaintiffs' note and mortgage were allegedly sold"; and (4) "attempting to collect debts from Plaintiffs [that] . . . Defendants were not entitled to collect or receive."  (Compl. ¶ 24; Opp. at 9–10.)  Defendants contend that Plaintiffs' allegations fail to state a claim because Defendants did not owe Plaintiffs a legal duty.  (Mot. at 7–8.)  In response, Plaintiffs argue that Defendants "have a duty to assure that debt which is being collected is owed to the entity seeking collection."  (Opp. at 9.)

To state a claim for negligence, a plaintiff must plead three elements: "a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach."  <u>D. Houston, Inc. v. Lowe</u>, 92 S.W.3d 450, 454 (Tex. 2002).  "The burden is on a plaintiff to prove the existence and violation of a legal duty owed by the defendant," <u>Ranger Conveying & Supply Co. v. Davis</u>, 254 S.W.3d 471, 478 (Tex. App. 2007), and  "[w]here the only duty between parties arises from a contract, a breach of this duty will ordinarily sound only in contract,

not in tort," Endsley Elec., Inc. v. Altech, Inc., 378 S.W.3d 15, 22 (Tex. App. 2012).  A duty may sound in tort if a special relationship exist between the parties to a contract.  Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663, 675 (Tex. App. 1996) ("Some contracts involve special relationships that may give rise to duties enforceable as torts.").  However, "no such relationship exists under a contract between a mortgagor and a mortgagee."  Carrington v. Bank of Am., No. H-12-1542, 2013 WL 265946, at *7 (S.D. Tex. Jan. 17, 2013) (quoting FDIC v. Coleman, 795 S.W.2d 706, 709 (Tex. 1990)).

It is not clear from the pleadings on what basis Plaintiffs assert that Defendants owe them a legal duty.  However, Plaintiffs' cause of action for negligence apparently arises from the allegedly fraudulent assignment and the Defendants' subsequent attempts to foreclose despite their alleged lack of standing to do so.  Thus, any duty must arise from Plaintiffs' contractual relationship with the Defendants under the note and deed of trust.  See Carrington, 2013 WL 265946, at *7 (noting that "plaintiffs are limited to recovery under the note and deed of trust, the contracts through which they obtained the loan in dispute"); Long v. NCNB-Tex. Nat'l Bank, 882 S.W.2d 861, 869 (Tex. App. 1994) ("Fundamentally, promissory notes . . . are contracts.").  That being so, any legal duty owed by the Defendants to the Plaintiffs sounds in contract, not in tort.

18

Likewise, as Defendants correctly point out, the economic loss rule bars Plaintiffs' negligence claim as a matter of law. "When the only loss or damage is to the subject matter of the contract . . . the economic loss rule precludes recovery of economic losses in negligence. . . ." Dwayne Rogers Logging, Inc. v. Propac Indus., Ltd., 299 S.W.3d 374, 382–83 (Tex. App. 2009). Plaintiffs' argument that their negligence claim "is not based upon a contract, but upon the failure to exercise due care in the collection of a debt" (Opp. at 9) is without merit. The only losses allegedly suffered by Plaintiffs arise from Defendants' allegedly fraudulent attempt to foreclose upon the note; in other words, Defendants' attempt to enforce a contract between the parties.

V.      Injunctive and Declaratory Relief

In addition to damages, Plaintiffs seek an injunction and a declaratory judgment "that neither [Deutsche Bank] nor [JPMorgan] have any legal, pecuniary or equitable interest in the properties at issue, that neither Defendant is entitled to enforce the power of sale of the deed of trust which encumbers the subject property, and that neither Defendant is entitled to payment from any Plaintiff herein." (Compl. ¶ 38.)

Plaintiffs do not indicate whether they seek declaratory relief under the Texas Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.009,

or under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

However, the Fifth Circuit has held that the Texas Declaratory Judgment Act is a

procedural rule that does not apply in federal court, see Utica Lloyd's of Tex. v.

Mitchell, 138 F.3d 208, 210 (5th Cir. 1998), and federal district courts have taken

that to mean that when a declaratory judgment action filed in state court is removed

to federal court, "that action is in effect converted into one brought under the

federal Declaratory Judgment Act," Redwood Resort Props., LLC v. Holmes Co.,

No. 3:06-CV-1022-D, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007); see

also Routh, 2013 WL 427393, at *13 ("In this case, . . . the Federal Declaratory

Judgment Act applies rather than the Texas Declaratory Judgment Act because

both acts are procedural and federal courts apply their own procedural rules.").  To

be entitled to declaratory relief under the Federal Declaratory Judgment Act, a

plaintiff must allege facts demonstrating that there exists "a substantial and

continuing controversy between the two adverse parties."  Bauer v. Texas, 341

F.3d 352, 358 (5th Cir. 2003).  Thus, in the absence of a live substantive claim,

Plaintiffs' request for a declaratory judgment must be dismissed.  See, e.g., Marsh,

2012 WL 3756276, at *9.

            Finally, Plaintiffs' preliminary injunction is denied.  Plaintiffs may

not seek a preliminary injunction in a complaint.  Pursuant to Local Rule CV-65,

"[a]n application for a temporary restraining order or preliminary injunction shall be made in an instrument separate from the complaint."  Moreover, for the reasons explained above, Plaintiffs have not pled a single viable cause of action; thus, their claim for injunctive relief fails.  See Pajooh v. Harmon, 82 F. App'x 898, 899 (5th Cir. 2003) (affirming district court's denial of injunctive relief when plaintiff failed to state a claim).

In sum, Plaintiffs fail to state a claim upon which relief can be granted.  Plaintiffs' claims are therefore dismissed.  However, the Court will allow Plaintiffs an opportunity to file an Amended Complaint within forty-five (45) days of the filing of this Order.  See Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave [to amend] when justice so requires."); Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) (observing that "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable").  Failure to do so and to cure the pleading deficiencies will result in dismissal of this action with prejudice.  The Court reminds Plaintiffs that they are required to "state [their] case with enough clarity to enable a court or opposing party to determine whether or not a claim is alleged."  Elliot v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989).

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendants' Motion to Dismiss.  (Doc. # 3.)  Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

DATED: San Antonio, Texas, February 20, 2013.

_____
David Alan Ezra
Senior United States District Judge

22